**Sidney Z. BOWMAN and Knute Haig,
Plaintiffs,**

**v.**

**Morris HARTIG et al., Defendants.**

**No. 71 Civ. 1815.**

United States District Court,
S. D. New York.

Dec. 1, 1971.

Feldshus & Frank, New York City, for plaintiffs; by Sidney Feldshuh, Richard Weinberger, Wynne B. Stern, Jr., New York City, of counsel.

Lehman, Rohrlich, Solomon & Heffner, New York City, for defendants; by Leonard H. Moche, Bernard K. Rothenberg, New York City, of counsel.

GURFEIN, District Judge.

This is a motion to dismiss the action pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure on the ground that the complaint fails to state a claim upon which relief can be granted; or, in the alternative, to require the plaintiffs pursuant to Fed.R.Civ.P. 12(e) to file a more definite statement.

The complaint contains six "causes of action." There is no diversity of citizenship. Jurisdiction is based on the existence of a federal question (28 U.S.C. §§ 1331 and 1337); Section 17 of the Securities Act of 1933 (15 U.S.C. § 77q); Sections 7(a) and 7(c) and 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78g(a) and (c), § 78j) and Rule 10b–5, and Regulation T issued by the Federal Reserve System Governors (12 C.F.R. 220.1 et seq.).

The general allegations are that certain defendants are co-partners in a stock brokerage firm, Gruntal & Co. (Gruntal) which is also a broker-dealer registered as such under Section 15 of the 1934 Act and a member of the New York and American Stock Exchanges. Defendant Schechter was a registered representative of Gruntal.

About February 1966 pursuant to inducements by Gruntal, plaintiffs became joint venturers (apparently with each other) in the business of writing puts and calls. Gruntal held itself out as an expert in the put and call business and assured the plaintiffs that Gruntal would abide by all governmental and exchange regulations. Pursuant to these "inducements," plaintiffs opened a trading margin account with Gruntal to write option contracts known as "puts" and "calls." Upon the opening of the margin accounts and thereafter, Gruntal called to the attention of the plaintiffs various recommendations to accept option contracts with the understanding that Gruntal would guarantee performance of the option contracts to the other contracting parties. Gruntal represented to the plaintiffs that its primary objective was the realization by the

plaintiffs of substantial monetary returns and profits from this business. In reliance on the representations, the plaintiffs invested substantial sums of money and engaged in the business described. The plaintiffs continued, upon the recommendations of Gruntal, to execute numerous option contracts between February 21, 1966 and May 19, 1969.

## THE FIRST CAUSE OF ACTION

Prior to May 20, 1969 Gruntal extended credit to the plaintiffs which, upon information and belief, exceeded the limits prescribed by Section 7(a) and (c) of the 1934 Act, "Regulations of the Governors of the Federal Reserve System" and rules of the national exchanges and NASD,[1] as well as of the house rules of Gruntal. These violations were allegedly committed by Gruntal without the knowledge of the plaintiffs that the extensions of credit were in violation of the margin requirements provided for in the statutes and rules. On May 20, 1969, without prior notice, Gruntal by telegram requested $300,000 of additional margin "owing to market declines." The plaintiffs notified Gruntal that they could not meet the demand and the latter seized control of the plaintiffs' account and the assets and securities therein and appropriated these to the use and benefit of itself. It is finally alleged that "by reason of the aforesaid over-margining"[2] Gruntal caused the plaintiffs to be in a position of peril and danger, causing damages of upwards of $250,000.

The defendants attack the first cause of action for insufficiency on several grounds. They contend that there is no federal law which requires a broker to enforce strictly, for the benefit of a customer, a margin requirement of a stock exchange or similar house rule. That may be true, cf. Colonial Realty Co. v. Bache & Co., 358 F.2d 178 (2 Cir. 1966), cert. denied, 385 U.S. 817, 87 S.Ct. 40,

17 L.Ed.2d 56; Shemtob v. Shearson, Hammill & Co., Inc. [1970–1971 Transfer Binder], CCH Fed.Sec.L.Rep. ¶93,036 (S.D.N.Y. May 7, 1971), aff'd, 448 F.2d 442 (2 Cir. 1971), but the complaint also charges a violation of § 7(a) and (c) of the 1934 Act and of the Federal Reserve Regulations. *

The defendants claim, moreover, that the allegations respecting statute and regulation are conclusory and fail to state what wrongs were actually committed.

Under the modern theory of notice pleading (except where fraud must be specifically alleged) the complaint should not be dismissed for insufficiency "unless it appears to a certainty, that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." See 2A Moore's Federal Practice ¶12.08, pp. 2271–2285, passim. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Ambiguities must be resolved in favor of the pleading. A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2 Cir. 1967); Vine v. Beneficial Finance Co., 374 F.2d 627 (2 Cir. 1967); Appel v. Levine, 85 F.Supp. 240 (S.D.N.Y.1948). It may be conceded that the complaint is sparse. It fails to state what the margin requirements were at any given time or how, and to what extent, they were evaded. But it may readily be seen that in the case of an active margin account running from February 1961 to May 1969, a period of eight years, it would be prolix to state the particulars of the under-margining. The defendant Gruntal has the account in the house; it has the means to trace the history of the debits and credits in the account and to compare them with the regulations extant at given times. It has been told what the cause of action is.

The extension of credit by a broker-dealer in violation of § 7(c) of the 1934 Act and Regulation T gives

---

1. NASD is the National Association of Securities Dealers.

2. The plaintiffs obviously mean "under-margining."

rise to a private claim for relief if loss has resulted. See Pearlstein v. Scudder & German, 295 F.Supp. 1197 (S.D.N.Y. 1968), rev'd in part and aff'd in part, 429 F.2d 1136 (2 Cir. 1970), cert. denied, 401 U.S. 1013, 91 S.Ct. 1250, 28 L. Ed.2d 550 (1971); Smith v. Bear, 237 F.2d 79, 87–88 (broad dictum) (2 Cir. 1956); Cooper v. North Jersey Trust Co., 226 F.Supp. 972 (S.D.N.Y.1964); Remar v. Clayton Securities Corp., 81 F.Supp. 1014 (D.Mass.1949). It appears that the "main purpose" of Section 7(c) of the 1934 Act was "to give a government credit agency an effective method of reducing the aggregate amount of the nation's credit resources which can be directed by speculation into the stock market," House Com.Rep. No. 1383, 73rd Cong., 2nd Sess.; but there was also a "by'product of the main purpose"—"protection of the small speculator by making it impossible for him to spread himself too thin." *Ibid.* By now "the small speculator" may indeed be the wolf of Wall Street in sheep's clothing. Yet, he enjoys a paternalistic protection if his stockbroker chances to lend him more than he is allowed to for the purchase or carrying of securities. If damage comes from such foolish speculation born of excessive credit, it is the broker who must pay the piper to vindicate the purposes of the statutory controls (cf. Friendly, C. J. dissenting in Pearlstein v. Scudder & German, *supra*, 429 F.2d at 1144). The first cause of action sufficiently describes the victim, the violator, and the violation to enable the defendants to make their defense to a claim for relief. When discovery is done there may, indeed, be no claim for relief at all, and summary judgment will afford the remedy, as Judge Kaufman noted recently in A. T. Brod v. Perlow, *supra*, 375 F.2d at p. 398. The first claim for relief is sufficient.

I should add that, although the point is not raised, in the case of a put contract there may be some confusion as to what portion of Regulation T the plaintiffs claim was violated. They may be referring to the requirement that on the purchase of a security the customer must put up the purchase price within seven days; on the other hand, that refers to cash accounts. (Reg. T § 220.4c —which was the subsection involved in the *Pearlstein* case, *supra.*) In the case of margin accounts, which this "account" seems to be, the reference may be to Reg. T § 220.3(e), which requires liquidation of enough securities within five days to make up for the default in deposit of sufficient collateral to maintain the account with proper margin.

Accordingly, plaintiffs will state with respect to the first claim for relief which subsection and paragraph of Regulation T they claim was violated and when. If discovery is needed to fix the time, the statement may be made more definite after discovery.

### THE SECOND CAUSE OF ACTION

While the "first cause of action" stated that excessive credit had been furnished, making that the gravamen of the claim, the second cause alleges that when Gruntal seized the account on May 20, 1969 it refused to liquidate it as it was obliged to do under Regulation T.

It would have been better pleading to state when the account was, in fact, liquidated, but it is reasonably clear that the charge is that the liquidation was not effected within the five days required by Regulation T. That states a claim for relief. Pearlstein v. Scudder & German, *supra.*

### THE THIRD CAUSE OF ACTION

The complaint alleges that (1) Gruntal falsely represented that its primary interest was to make profits for the plaintiffs whereas its primary purpose was to make commissions for itself; (2) in pursuance of the latter "scheme," Gruntal induced the plaintiffs, in May 1969, to write option contracts of Asamera securities without disclosing that Gruntal was already committed to dispose of option contracts "of and concern-

ing" securities of Asamera; and (3) Gruntal represented that plaintiffs would make substantial profits without extraordinary speculative risks, and contrary to the representations, the plaintiffs suffered severe losses. It is alleged that the foregoing acts violated § 17 of the 1933 Act and § 10 of the 1934 Act and Rule 10b–5.

■ This pleading fails to state a claim for relief. Rule 9(b) Fed.R.Civ.P. "by-product of the main purpose"—"pro-provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . . shall be stated with particularity." That applies to claims brought under § 17 of the 1933 Act and § 10(b) of the 1934 Act. See Shemtob v. Shearson, Hammill & Co., 448 F.2d 442 (2 Cir. 1971).[3] See Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 774 (D.Colo.1964); 2A Moore's Federal Practice ¶9.03.

■ The allegation that the customer was told that the broker's primary purpose was to make profits for the customer is nothing more than the common puff of a salesman and must be looked at from the point of view of a reasonable person. See S. E. C. v. Texas Gulf Sulphur Co., 401 F.2d 833 (2 Cir. 1967), citing List v. Fashion Park, Inc., 340 F.2d 457, 462 (2 Cir. 1965). That plaintiffs were told they would make "substantial profits without extraordinary speculative risk" is the common plaint of any loser against his investment adviser. The law does not give premiums for naivete.

■ The claim that the Gruntal firm was already committed to dispose of the option contracts they allegedly induced the plaintiffs to write is a claim of non-disclosure of a material self-interest which is tantamount to fraud. Under Rule 9(b), the defendants are entitled to more than the barest allegation on this score. This claim for relief is dismissed with leave to amend.

### THE FOURTH CAUSE OF ACTION

■ The plaintiffs allege that following the "seizure" of their margin account on May 20, 1969 Gruntal took in securities put to the plaintiffs under various option contracts and failed to liquidate them promptly. This is alleged to be a violation of Regulation T. While the pleading is inartistic the claim apparently relates to the requirement of Regulation T for a liquidation of an account within five days when it is under-margined. See Pearlstein v. Scudder & German, *supra*. This claim for relief is dismissed with leave to amend.

### THE FIFTH CAUSE OF ACTION

■ It is alleged that Gruntal "promised" to effect such trades as would reduce speculative risks and losses if they occurred; and that Gruntal breached its promise, seized the account, and refused to permit such trades. This is a claim for breach of contract as to which there would be no federal jurisdiction in the absence of diversity. In this case, however, there is pendent jurisdiction. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

### THE SIXTH CAUSE OF ACTION

■ This "cause of action" charges Gruntal with negligence and breach of fiduciary duty in handling the account of the plaintiffs. It is not a federal claim but may remain under the doctrine of pendent jurisdiction.

In view of my remarks on the efficacy of discovery and the remedy of summary judgment, I deny the motion for a more definite statement, except as to the first claim for relief as required in this opinion.

Settle order on notice.

---

**3.** The plaintiff there as here suffered great loss in Asamera stock.