**Peter CLARK, Plaintiff,**

v.

**KIDDER, PEABODY & CO., INC., and Terry Cross, Defendants.**

85 Civ. 8140 (RLC).

United States District Court, S.D. New York.

May 9, 1986.

Seaman, Ashley & Cohen, New York City, for plaintiff; Perry Ashley, of counsel.

Shanley & Fisher, P.C., New York City, for defendants; Matthew Farley, Robert G. Brehme, of counsel.

ROBERT L. CARTER, District Judge.

Plaintiff Peter Clark has brought this action against defendants Kidder, Peabody & Co., Inc. ("Kidder") and Terry Cross, alleging both state law fraud and violations of the federal securities laws. Jurisdiction is grounded in diversity of citizenship, 28 U.S.C. § 1332, as well as in the assertion of a federal claim, 28 U.S.C. § 1331. The defendants have moved to compel arbitration of all claims or, alternatively, to dismiss those claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* ("Section 10(b)"), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 ("Rule 10b–5") pursuant to Rule 12(b)(6), F.R. Civ.P., and to arbitrate those that remain.

BACKGROUND

Clark was a nineteen-year old sophomore at Cornell University when he decided to open an investment account at Kidder with his share of the assets from his father's estate. In January, 1983, he met Cross, an investment broker, at Kidder's office in Detroit. He told Cross that "he was not risk oriented and would need to withdraw funds from the Account from time to time for his college tuition, room and board and other living expenses." Complaint, ¶ 13. He estimated that he would need $17,000 to $18,000 a year in income from the account. Clark then signed a contract that gave

Cross discretion to trade securities on his account. That contract, annexed to the complaint, contains no arbitration clause.

Money was not placed into the account until April, 1983, when the administrator of Clark's father's estate sent Cross a check for $289,314. At first, this entire amount was deposited in the "Webster Cash Reserve Fund," an interest bearing account managed by Kidder. Beginning in May, 1983, Cross began to invest in securities. Clark alleges that Cross bought speculative, non-dividend paying "high-tech" stocks. Complaint, ¶ 22. Clark also complains that Kidder made a market in all of these stocks, and that Cross bought and sold some of these securities at prices higher or lower than the market price. Although Cross never conferred with Clark prior to undertaking these transactions, Kidder's confirmation slips stated that Cross had not exercised his discretion. Complaint, ¶ 25.

The account's value dipped dramatically. Clark called Cross twice, in January and May of 1984, and was told not to worry. By March, 1984, the account had only generated $14,063 of income, less than the minimum of $17,000 that Clark had said he would require. All of this income came from the portion of the account invested in the "Webster Cash Reserve Fund."

In May, 1984, the account was restructured so that Clark could draw checks upon it. Clark signed a new contract with Kidder, this time agreeing to arbitrate all disputes "arising out of or relating to accounts of or transactions with or for me or to this agreement or the breach thereof ...." Exhibit A to Affidavit of Terry Cross (December 16, 1985). The value of Clark's account continued to decline and in August, 1984, Clark revoked Cross's discretionary authority. In October, 1985, he filed this lawsuit. The first count charges Cross with violating Section 10(b) and Rule 10b–5 by knowingly purchasing unsuitable securities. Complaint, § 39(a). It also charges that the defendants failed to disclose that the securities purchased were high-risk and non-dividend paying, omitted

to explain the significance of notations on the confirmation statements that Kidder made a market in the securities purchased, and omitted to explain the significance of the notation that discretion had not been used. Complaint, § 39(b). Third, he alleges that the defendants engaged in a "device, scheme, and artifice" to defraud by manipulating the prices and sales volumes of the stocks sold to plaintiff. Complaint, § 39(c). Fourth, he alleges that Cross misrepresented that the portfolio would be managed properly and efficiently. Complaint, ¶ 39(d). The second, third and fourth causes of action are for negligence, breach of fiduciary duty and fraud, respectively.

### DISCUSSION

If there is a valid agreement to arbitrate covering this dispute, the motion to compel arbitration must be granted. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Plaintiff does not challenge the validity of the agreement that he signed in May, 1984. Rather, he challenges the application of that agreement to the transactions—all of which occurred prior to May, 1984—that form the basis of his complaint.

■ The court must determine whether this case is arbitrable. *Prudential Lines Inc. v. Exxon Corp.,* 704 F.2d 59, 64 (2d Cir.1983). Arbitration agreements are to be liberally construed in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). This clause covers this dispute. By its terms, the clause covers all disputes relating to Clark's account at Kidder. The May, 1984 agreement did not create a new account; in the words of Clark's own complaint, that agreement merely restructured an existing account. Complaint, ¶ 34. Thus, in agreeing to modify the terms of the account Clark consented to submit claims relating to that account to arbitration. It is irrelevant that the transactions at issue occurred before this modification was effected.

■ Defendant's motion to compel arbitration is granted as to Clark's state law claims. Until recently, the issue of arbitrability of Section 10(b) divided the courts within this circuit. This court was itself divided. The majority position held that Section 10(b) claims were arbitrable. *See, e.g., Intre Sport Ltd. v. Kidder, Peabody & Co.,* 625 F.Supp. 1303 (S.D.N.Y.1985) (Sweet, J.); *Finkle & Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505 (S.D.N.Y. 1985) (Edelstein, J.); *Jarvis v. Dean Witter Reynolds, Inc.,* 614 F.Supp. 1146 (D.Vt. 1985) (Tenney, J.); *Brener v. Becker Paribas, Inc.,* 84 Civ. 5872 (S.D.N.Y. December 31, 1985); *Ilan v. Shearson/American Express, Inc.,* 632 F.Supp. 886 (S.D.N.Y.1985) (Conner, J.); *Johnson v. Kidder, Peabody & Co.,* 85 Civ. 178 (N.D.N.Y. July 30, 1985). *Contra, Leone v. Advest, Inc.,* 624 F.Supp. 297 (S.D.N.Y.1985) (Carter, J.); *Weizman v. Adornato,* 84 Civ. 3603 (E.D.N.Y. April 25, 1985). While this motion was under advisement, our Circuit approved this court's minority ruling in *Leone v. Advest, supra,* and held that Section 10(b) claims are not arbitrable. *McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94, 97 n. 4 (2d Cir.1986). *See also AFP Imaging Corporation v. Ross,* 780 F.2d 202, 205 (2d Cir.1985). Therefore, we retain jurisdiction over the claims arising under Section 10(b) and Rule 10b–5.

We now turn to defendants' arguments that the complaint fails to state a cause of action under Section 10(b) and Rule 10b–5. Only one of Clark's allegations is actionable. Therefore, the Rule 12(b)(6), F.R. Civ.P. motion to dismiss is granted in part and denied in part.

■ The first paragraph of the securities law count charges that Cross knowingly and intentionally purchased unsuitable securities for Clark's account. The knowing recommendation of an unsuitable security states a cause of action for fraud under Section 10(b). *Clark v. John Lamula Investors, Inc.,* 583 F.2d 594 (2d Cir.1978); *Rush v. Oppenheimer & Co.,* 592 F.Supp. 1108, 1112, *vacated in part,* 596 F.Supp. 1529 (S.D.N.Y.1984) (Sweet, J.). In this district, an unsuitability cause of action has been held to lie where a broker who exercises discretionary authority knowingly misrepresents that the securities purchased are suitable. *Mauriber v. Shearson/American Express, Inc.,* 567 F.Supp. 1231, 1237 (S.D.N.Y.1983) (Duffy, J.). Clark asserts only that Cross "indicated" that the account would be invested suitably. Complaint, ¶ 39(d). We need not rely on this ill-pled assertion to sustain this claim. There is also authority that, even absent any misrepresentation, a broker's knowing purchase of an unsuitable security for a discretionary account is actionable. *In Re Catanella and E.F. Hutton & Co., Inc. Securities Litigation,* 583 F.Supp. 1388, 1405 (E.D.Pa.1984). Under *Catanella's* reasoning, the unsuitable purchase itself is the proscribed act, not any representation connected with that purchase. Given that this circuit does recognize an unsuitability cause of action under Rule 10b–5, the court sees no reason to restrict it to those situations in which a recommendation or representation as to suitability is made. As one treatise recognizes, the execution of a transaction for a discretionary account is, in function, a form of recommendation. 5B Jacobs, *Litigation and Practice Under Rule 10b–5,* 9–31 (1981). As such, it creates the same duties. The decision in *Clark v. John Lamula, supra,* emphasized the broker's scienter as the chief precondition of liability, not the recommendation. The complaint adequately alleges facts—such as the purportedly false statements that discretion had not been used—supporting Clark's claims of scienter. Thus, the complaint does state a Section 10(b) and Rule 10b–5 cause of action. The motion to dismiss is denied as to this portion of Count One.

■ By the same token, the set of allegations in paragraph 39(d) does not state a cause of action for unsuitability. Clark alleges that Cross falsely and recklessly "indicated"—he does not say where or when or how—that the account would be invested suitably, properly and efficiently. Recklessness is insufficient scienter for an

unsuitability claim. *Clark v. John Lamula Investors, supra.* These allegations are dismissed.

 The second set of allegations of fraud focus on Cross's failure to describe the securities purchased as high-risk, speculative, non-dividend paying, and so forth. Complaint ¶ 39(b). Clark also charges that Cross failed to explain the significance of notations on the confirmation slips that Kidder made a market in the securities purchased or that discretion was not used in making the purchases. Plaintiff recites no law that demonstrates that Cross was under any affirmative duty either to describe the purchases or to explain the notations. But even if he were, any lapse could have caused neither the purchases themselves nor any loss associated with them. These allegations do not meet Rule 10b–5's causation requirement. *Bennett v. United States Trust Co. of New York,* 770 F.2d 308 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Thus, this portion of the complaint is dismissed.

Finally, Clark charges that Cross manipulated the price and sales volume of specific securities. Complaint, ¶ 39(c). The defendants do not argue that this allegation fails to state a claim, but that it has not been pled with adequate particularity to satisfy Rule 9(b), F.R.Civ.P.[1] The complaint is wholly innocent of allegations of the manner in which any manipulative acts defrauded Clark. The requirement of particularity for pleadings of fraud has not been met. *Moran v. Kidder, Peabody & Co.,* 609 F.Supp. 661 (S.D.N.Y.1985) (Sweet, J.), *aff'd,* 788 F.2d 3 (2d Cir.1986). Therefore, this portion of the complaint is dismissed without prejudice. Plaintiff has the court's leave to amend his complaint in order to satisfy the requirements of Rule 9(b), F.R.Civ.P. as to his manipulation claim.

IT IS SO ORDERED.

---

1. Defendants did not move for a dismissal of this claim pursuant to Rule 9(b), F.R.Civ.P., in their Notice of Motion. However, this issue was fully briefed in their moving and reply memoranda as well as in plaintiff's memorandum in opposition.