159 N.J. Super. 546 (1978)
388 A.2d 990
JOSEPH J. MURPHY REALTY, INC., PLAINTIFF-APPELLANT,
v.
MARVIN J. SHERVAN, LOUISE S. SHERVAN, HIS WIFE, DEFENDANTS-RESPONDENTS, AND RUTH G. STAGG, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF JAMES C. STAGG, JR., DECEASED, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 9, 1978.
Decided May 23, 1978.
*547 Before Judges HALPERN, LARNER and KING.
Messrs. Ferro, Lamb & Kern, attorneys for plaintiff-appellant (Ms. Nancy C. Ferro on the brief).
Mr. Robert J. Berman, attorney for defendants-respondents Marvin J. Shervan and Louise S. Shervan.
The opinion of the court was delivered by LARNER, J.A.D.
This litigation involves claims arising out of the failure of a purchaser to consummate a contract to purchase a private home. The broker, Joseph J. Murphy Realty, Inc. (Murphy), brought an action against the seller Stagg and the purchasers Marvin J. Shervan and Louise S. Shervan, his wife (Shervan), to recover its commission of $7,500. Stagg sued Shervan on an $11,000 note which Shervan had delivered in connection with the purchase. And Shervan counterclaimed against Murphy alleging fraud in *548 inducing Shervan to enter into the contract to purchase the Stagg home and seeking damages measured by any judgment recovered by Stagg against Shervan.
The trial judge granted summary judgment in favor of Stagg on Murphy's affirmative claim, and the case proceeded to trial by jury on the remaining issues among the parties. By way of answers to special interrogatories in the case of Murphy v. Shervan the jury found that defendant did not breach the contract with Stagg. In the case of Stagg v. Shervan the jury found that defendant had breached the purchase contract and assessed damages in the sum of $11,000. On the counterclaim of Shervan against Murphy the jury found that Murphy fraudulently induced Shervan to enter into the contract with Stagg and awarded damages in the sum of $11,000. Murphy's motion for a new trial was denied and judgments were entered in harmony with the jury's findings.
Only Murphy appeals, attacking the judgment in favor of Shervan on Murphy's affirmative commission claim and the damage award on Shervan's counterclaim.
In connection with the commission claim Murphy points to several trial occurrences as grounds for reversal. In view of the basis of our decision to affirm the judgment in favor of Shervan on this phase of the litigation, it is unnecessary to consider the arguments advanced by the appellant.
The evidence is clear and incontrovertible that Shervan's failure to consummate the purchase was in utter good faith and resulted only because of financial inability to close. As Shervan informed Murphy throughout the transaction, he could not provide the funds to consummate the purchase unless he was able to sell his own home  a goal which was never fulfilled.
Under such circumstances, where there is no evidence of wrongful conduct on the part of the purchaser, he is not liable to the broker for failing to consummate the purchase contract. This conclusion was reached by the Supreme Court *549 in Rothman Realty Corp. v. Bereck, 73 N.J. 590 (1977), which also involved an action by a broker against the purchaser of a home. As noted by Justice Schreiber in that case:
To imply an obligation on the part of a buyer that he will pay the broker a commission, even though the buyer has acted in good faith with every intendment of acquiring the premises, but is unavoidably through no fault of his own prevented from consummating the purchase, is unquestionably contrary to the buyer's expectable understanding when he engages the broker.
In a sense there has been no wrongdoing or default by the buyer. * * * These cases recognize that liability should not be imposed on the seller where he acts in good faith and his inability to perform is not related to any wrongful act or misconduct on his part. To the same effect see Blau v. Friedman, 26 N.J. 397 (1958); Alexander Summer Co. v. Weil, 16 N.J. Super. 94 (App. Div. 1951).
The same rule should equitably be applied to the buyer. It must be remembered that the buyer has not entered into any written or formal agreement with the broker, but that the promise between the broker and the buyer has been implied by law. In these circumstances the "risk of such inability at that crucial time [the closing] must be treated as a normal incident of the brokerage business." Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. at [528] 552 [at 601-602]
Rothman Realty is controlling under the record facts herein and mandates that the judgment for Shervan on Murphy's commission claim is warranted as a matter of law.
We thus turn to the issue of the propriety of the judgment entered against Murphy on Shervan's counterclaim. This judgment was based upon a finding that Murphy's representative had made fraudulent misrepresentations to Shervan which induced him to enter into the purchase contract. The misrepresentations underlying Shervan's counterclaim consisted of oral statements by Murphy's representative pertaining to the saleability of Shervan's home. The trial transcript reveals that Shervan on several occasions prior to the signing of the contract informed the broker that he was "house rich" and that any purchase he would make would have to be contingent upon the sale of his own house. In response the broker said: *550 We had no worry * * * we had a very saleable house. * * * It was a very saleable house. It was a great market and that we shouldn't have a problem, not to worry.

* * * * * * * *
She felt we could sell it. She didn't know exactly for how much.
Initially, Shervan signed a form of contract submitted by the broker and delivered a deposit check of $7,000. This form was, in legal effect, only an offer, for the seller's attorney undertook to prepare a more complete bilateral agreement. The Shervans were then invited to the office of the seller's attorney to execute the contract and furnish the balance of the deposit.
At the meeting in the attorney's office Shervan requested the seller's attorney to include a contingency clause in the contract, making the sale contingent upon the sale of Shervan's house, pointing out that he was reluctant to sign without such a clause. However, the attorney refused to include such a clause in the contract.
According to Shervan, the broker at that point stated:
She said we didn't need such a clause because there was no problem. They had looked at our house. They felt that it was saleable and we should probably have no problem in selling it.
Shervan then signed the contract and delivered a note in the sum of $11,000 representing the balance of the deposit. He testified that he "probably" would not have signed the contract if the broker had advised that "she could not have sold our house."
Although the record reflects some dispute as to the exact contents of the conversations between Shervan and the broker and attorney, nevertheless in light of the jury verdict we must assume the truth of Shervan's assertions and afford to him the benefit of the most favorable inferences from his testimony.
Utilizing this standard of review, we find that the evidence was insufficient to sustain Shervan's allegation of fraud or to warrant the jury verdict on his counterclaim.
*551 The basic reason for this conclusion is that the representations did not deal with a presently existing or past fact. They rather consisted of vague and ill-defined opinions as to the prospect of a saleability of the house. For a litigant to succeed on a claim of legal fraud, which is the essence of Shervan's counterclaim, he must establish the falsity of a material representation of a presently existing or past fact. Anderson v. Modica, 4 N.J. 383, 391-392 (1950). See also Foont-Freedenfeld v. Electro-Protective, 126 N.J. Super. 254, 257 (App. Div. 1973); Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 380 (App. Div. 1960); Comfort Spring Corp. v. Brooks Equipment Corp., 13 N.J. Super. 564, 566 (App. Div. 1951).
The distinction between a representation of a fact and opinion is summarized in the following excerpt:
The distinction between fact and opinion is broadly indicated by the generalization that what was susceptible of exact knowledge when the statement was made is usually considered to be a matter of fact. Representations in regard to matters not susceptible of personal knowledge are generally to be regarded as mere expressions of opinion, and this is held to be so even though they are made positively and as though they are based on the maker's own knowledge. Usually, also, to say that a thing is only matter of opinion imports that it is unsusceptible of proof. [37 Am. Jur.2d, Fraud and Deceit, § 46 at 74]
It is manifest that the deficiency of proof of a prima facie case of fraud herein consisted of the absence of proof of a fact and the absence of proof that such fact existed at or prior to the time of the alleged misrepresentation. In essence, the statements by the broker were not of material facts "susceptible of exact knowledge" when made, and therefore were not susceptible of proof of fraud.
In view of the foregoing, the judgment in favor of Shervan on the Murphy complaint is affirmed; the judgment in favor of Shervan on the counterclaim is reversed with the direction that judgment be entered thereon in favor of Murphy. No costs to either party.